STATE OF NEBRASKA, EX REL. J. R. WEBSTER, v. BOARD OF COUNTY COMMISSIONERS OF LANCASTER COUNTY.

1. Counties: REFUNDING BONDS: CONTRACT WITH ATTORNEY. One W. claimed to have discovered that certain bonds issued to railroads by L. county, drawing ten per cent interest and supposed to have many years to run, were payable "on or before" the ultimate date of payment at the option of the county, and that they could be refunded with six per cent bonds. He thereupon entered into a contract with the county commissioners of said county to procure the refunding of said bonds for a certain per cent of the proceeds to be retained by him. *Held*, That the commissioners had no authority to enter into such contract, and that it was void.

2. ———:  COMPENSATION OF AGENT.  Where a county employs an
    agent to refund its bonds, and  before  the revocation of  the au-
    thority he necessarily performs labor and expends money in the
    prosecution  of  the business from which the county derives ben-
    efit, he is entitled to a fair compensation for said labor, and the
    repayment of said money.

3. Referee :  PRACTICE.  Where a  party desires a referee to find
    additional facts he should file a motion for a further report.

ORIGINAL application for mandamus.

*J. R. Webster*, relator, *pro se.*

*W. J. Lamb*, for respondents.

*Mason & Whedon* and *D. G. Courtnay*, for intervening
parties.

MAXWELL, CH. J.

This is an  original action  to  compel  the  defendants to
to pass  upon a claim of relator  filed  with  said board for
money alleged to have  been expended, and for certain la-
bor alleged to have been performed  by  him  in the refund-
ing of the bonds of Lancaster county.   The cause was re-
ferred to Hon. W. H. Munger to take testimony and find
the facts, and he has made a report, as follows :

"In pursuance of an order of this court, appointing the
undersigned sole referee to find and report the facts at is-
sue in this case, I took the oath required by law, and fixed
the 23d day of March, 1886, at the office of the county clerk
of said county, as the time and place for hearing, and noti-
fied the parties thereof.

"At the time and place above stated, I proceeded to the
trial of the  matters  above referred to me, the relator ap-
pearing in person, and the respondents by Walter J. Lamb,
their attorney, and the intervenors, by O. P. Mason and
D. G. Courtnay, their attorneys, and after hearing the evi-

·dence offered by the parties and the arguments of their attorneys, I find the following facts :

" 1st. That at the several dates hereinafter mentioned, .and for several years prior thereto, the relator was a practicing attorney in the city of Lincoln in said state.

. " 2d. That on the 1st day of May, 1871, the said county ·of Lancaster issued to the Midland Pacific Railway Company three hundred bonds with interest ·coupons attached, ·each bond for the sum of five hundred dollars, to aid in the construction of the railway of said company from Nebraska City, in the county of Otoe, to J street, in Lincoln, in Lancaster county, Nebraska.

" 3d. That on the 1st day of January, 1873, the said county of Lancaster issued to the Midland Railway Company two hundred bonds with interest coupons attached, each bond for the sum of five hundred dollars, to aid in the construction and completion of the railway of said ·company from the city of Lincoln, in the county of Lan- .caster, to the Union Pacific Railroad, in said state.

" 4th. That each and all of said bonds bore interest at the rate of ten per cent per annum, payable annually.

" 5th. That all of said bonds were issued in pursuance ·of propositions adopted by the electors of said county, pur- ·suant to the several acts of the legislature of the state of Nebraska in such cases made and provided.

" 6th. The proposition so adopted by the electors of ·said county under which the first series of said bonds were issued, provided that said bonds should be payable ' on or before the expiration of twenty-five years from the 1st day ·of May, 1871.'

" The proposition so adopted by the electors of said county under which the second series of said bonds were issued, provided that said bonds should be payable ' on or before .the expiration of thirty years from the date thereof.'

" 7th. . The first series of said bonds contained a recital ·that the same were payable ' on or before the 1st day of May, 1896.'

" The second series of said bonds contained a recital that the same were payable ' on or before the first day of January, 1903.'

" 8th.   A copy of said propositions so adopted by the electors of said county were duly spread upon the commissioners' records of said county.

" 9th.   No copy of the bonds of either series was preserved among the records of the commissioners' or county clerk's office.

" 10th.   A copy of the first series of said bonds was recorded in the office of the auditor of state of the state of Nebraska, but no such copy was recorded of the second series of said bonds.

" 11th.   That the bond register of said county showed that the first series of said bonds matured May 1st, 1896, and that the second series of said bonds matured January 1st, 1903, but did not show that the same were payable ' on or before ' said dates.

" 12th.   The interest on both series of said bonds had been paid down to and including the first day of January, 1884, the principal being outstanding and unpaid.

" 13th.   On the 11th day of January, 1884, the relator addressed the board of county commissioners of said county the following letter :

" ' January 11th, 1884.

" ' To the Board of County Commissioners, Lancaster County, Nebraska :

" ' Gentlemen—I have devised a plan by which I can obtain a surrender of some portion of the outstanding county bonds not due, at par, and fund the same into a lower interest bond, without bad faith or repudiation. Some of the bonds I can force in without expense to the county, or any weakening of its good credit and good name.

" ' I propose to do so for one-sixth part of the sum saved. I desire this may be kept confidential until you may deter-

mine what you will answer, and until after you have con-
ferred and advised with me on the matter.

"  'Respectfully,

 " 'J. R. WEBSTER.'

"14th. Negotiations were thereafter had between relator
and the board of county commissioners of said county un-
til the 3d day of March, 1884, when a contract was entered
into between relator and said board of county commission-
ers, which contract was spread upon the commissioners'
record of said county, and contained, among other recitals,
the following:

"  'Whereas. certain outstanding bonds of Lancaster
county, Nebraska, hereinafter mentioned, were voted to be
issued, and were issued, payable on or before their dates of
maturity; and whereas J. R. Webster desires authority to
undertake, on behalf of the county, to recall and redeem
such bonds, without expense or hazards of cost to the
county, and agrees to be at the expense and trouble to dis-
cover the whereabouts of the holders thereof, and notify
them, the said bonds are called in by said county, and are
now payable. Now, therefore, be it

"  'Resolved, By the board of county commissioners, that
J. R. Webster be and he is hereby authorized, for the pur-
pose and upon the conditions aforesaid, to act as agent of
the county of Lancaster in the premises.

"  '2. Resolved further, That the issue of bonds dated
May 1st, 1871, in the sum of $150,000, to the Midland
Pacific R. R. Company, also the issue of bonds dated Jan-
uary 1st, 1873, in the sum of $100,000, to the Midland
Pacific R. R. Company, with accrued interest on each of said
bonds to May 1st, 1884, be and the same are declared due
and payable at the county treasury May 1st, 1884, and after
May 1st, 1884, interest on said bonds and each and every
one of them shall cease.

"  '4. Resolved, That for the purpose of raising money
with which to redeem said bonds so called, there be executed

and negotiated six per cent interest bonds; said bonds to be negotiated, but not delivered or issued, until old bonds in like amount.are surrendered to county treasurer; none of said bonds to be negotiated or sold at less than their par. value. And for his compensation for services in and about this business said Webster shall and is hereby allowed the premium which said bonds on negotiation may bring, without other claim than such premium for any service rendered, for any expense incurred, or for any disbursement of moneys required to be made in any way connected with or arising out of the matter of calling in said outstanding indebtedness or bonds, or of the funding of the above, these series of bonds, or the negotiation or sale of the same.

"'The authority of said Webster to terminate one year from this date; and the said J. R. Webster accepts such employment on the above terms, and binds himself to the diligent and faithful performance of said service, and now agrees to hold the county harmless for all costs and expenses, from litigation or otherwise, that may or can in any way arise out of the said matter.'

"15th. That prior to the time relator addressed his letter of January 11th, 1884, to the said board of county commissioners, it was not known by said commissioners that said bonds were made payable 'on or before' the date of maturity; but after the receipt of said letter, and before said contract was entered into, such investigation was made as resulted in their learning the form of the first series of said bonds, and that the same were made payable 'on or before' the date of maturity; but said commissioners did not know the form of the second series of said bonds, or whether they were optional, until some time after the execution of said contract (although it is recited in the contract that they were all payable 'on or before').

"16th. That prior to the execution of said contract, relator solicited various citizens and tax-payers of said county

to advise the said board of commissioners as to the propriety of making a contract with said Webster for the purpose of funding said bonds. That several of such persons wrote letters to said commissioners stating, in substance, that in their opinion it would be for the best interest of the county to fund such bonded indebtedness, and in their opinion relator's proposition was a fair and reasonable one. That some of said letters were written under the impression and belief on the part of the writers that said bonds were voted optional but issued absolute in reference to time of payment. But relator did not state to any of the persons who wrote such letters that the bonds were issued absolute, and relator did not know whether the second series were issued absolute or conditional until some time after the execution of said contract; but he did know that the first series was issued conditional before the execution of the contract.

"17th. That in the month of January, 1884, and before said contract was entered into, the board of county commissioners employed Walter J. Lamb as the attorney for said Lancaster county for the year 1884, at the agreed price of $50 per month ($600 per year); that during all of said year 1884 said Lamb acted as the attorney for said county, and attended all the meetings of said board of commissioners, and advised them generally upon all matters, and was paid the price above stated therefor.

"18th. That in pursuance of said contract, and after the same was entered into, relator prepared form of call of said bonds, with resolutions for entry upon the commissioners' journal, and prepared form of new bond to be issued. He obtained the names and addresses of the holders, or nearly all, of such bonds, served notices personally on many of the holders, and on banking institutions through which the interest coupons had been collected, and made the call as generally known as possible. He visited many places where such bonds were held, for that purpose leaving home on or about

the 3d of April, went to Baltimore, Philadelphia, New York, Boston, and Manchester, N. H., saw many of the holders, and notified them for the most part; so that between the first of May and the middle of July, 1884, nearly the entire amount of the $250,000 was presented for payment, he being absent about three weeks. He also, at the suggestion of said board of commissioners, prepared and printed a prospectus or circular about the new issue of bonds and call of old bonds, which was approved by said board. His expenses, paid out in the printing above referred to, stationery, expressage, traveling expenses, in and about the foregoing matters, amounted to the sum of $453, no part of which has been paid him.

" 19th. That on the 25th day of April, 1884, a suit was commenced in the district court of said county by one Wm. C. Griffith, against the commissioners of said county, the county clerk, county treasurer, and county attorney, the object and prayer of which was to restrain the issue of said funding bonds. The petition in said act on reciting the said contract between relator and said board of county commissioners, a temporary order of injunction was granted in said action.

" 20th. That thereafter, on the 25th day of April, 1884, relator stated to said board of commissioners that his construction of the pleading and object of the Griffith action in its legal interpretation was not to prevent the funding of the bonds, but to prevent their being funded under the contract, and his compensation for the premium that they might bring; that to wait and litigate that matter would cause the county a large loss in difference of interest, and that the interests of the public in effecting the funding operation and saving default upon its call was, to his mind, a matter of paramount importance to his individual interest. He at the same time tendered a rescission of the contract by a written communication, in which written communication, among other things, he said : " In regard to

my own compensation, in case these suggestions are adopted, for services already done, in giving information of the redeemable character of these outstanding tens, and advice therewith connected, I will leave that wholly to the discretion of the board at a future time to adjust.'

"That thereafter, on the 25th day of April, 1884, at a session of said board of commissioners, an agreement was entered into between relator and said board of commissioners, which agreement was spread upon the commissioners' record, and was in words as follows:

      "'OFFICE OF THE CLERK OF LANCASTER ⎱
                COUNTY, NEBRASKA. ⎰

"'The board of commissioners of said county being in session, and having the matter of the proposed refunding of certain outstanding bonds under consideration, as well as a proposition and contract made and entered into by and between the board and one J. R. Webster, said agreement being recorded in commissioners' record "E," at page 32, and his rights under said contract being by said J. R. Webster waived by his report filed April 26th, 1884, make the following order in the premises, that is to say, that said contract be and the same is hereby rescinded, and the said J. R. Webster concurs in this action.

"'Dated at Lincoln, April 29th, 1884.

               "'H. C. RELLER,
               "'W. J. WELLER,
               "'W. E. CALDWELL,
                 "'County Commissioners.
               "'J. R. WEBSTER.'

"21st. That such proceedings in said suit brought by said Wm. C. Griffith were had that on the 30th day of March, 1885, at a session of the district court of said Lancaster county, a decree was rendered in said action as follows:

"'And now on this day this cause came on for final hearing before the court, the same having been previously

argued and submitted, and upon consideration the court doth find the issues in this cause in favor of the plaintiff, and that at the commencement of this action the temporary order of injunction allowed herein was properly and rightfully allowed, and the said court doth further find that since the commencement of this action, the contract sought to be enjoined, and which was enjoined by the temporary order of injunction allowed herein, has been by the parties thereto annulled and cancelled and abrogated, and there is no necessity for any further order or decree in the premises, and the said petition is dismissed, and the parties hereto go hence without day, and it is further considered, ordered, adjudged and decreed, that said suit be dismissed, and that the plaintiff pay one-fourth of the costs, taxed at $130.60, and the said defendants three-fourths of the costs herein, taxed at $91.75, and that execution issue therefor; and it is further ordered, adjudged, considered and decreed, that the principal and securities on the injunction bond, given in this cause, be and are hereby released, and forever discharged from liability thereon.'

"22 d.    That prior to the time relator addressed his first letter to said board, Jan. 11, 1884, it was not known by said board of commissioners that any of said bonds could be funded, that by reason of the letter thus written by relator and the contract entered into between him and the said board, such investigation was had as led to the finding out that said bonds were payable 'on or before' the final date of maturity.   That by reason of the action of the relator in having the call for payment made in finding out the names and residence of the holders and service of notices for redemption, the first series of said bonds were finally redeemed and the new funding bonds issued therefor, bearing interest at 6 per cent per annum, which funding bonds were sold to the state of Nebraska at par and the money used in payment of said first series of

bonds. But said matter was not completed and such sale to the state of Nebraska was not finally consummated until after the rescission of said contract, April 29, 1884.

"23d. Relator rendered no further services for said county after the rescission of said contract.

"24th. That a large portion of said second series of bonds were under said call presented for payment, but at the suggestion of certain tax payers that said second series were illegal, the said board on the...... day of......, 1884, ordered no further payment of interest, and no payment of principal to be made until the validity of the same should be judicially determined.

"25th. That by reason of the funding of said first series of bonds, from a 10 per cent to a 6 per cent interest bond the annual debt charge of said county was reduced $6,000.

"26th. The services rendered by relator, as before stated under said contract were of benefit and value to said county.

"27th. On the eighth day of May, 1884, relator filed with the county clerk of said county his bill for services and expenses, a copy of which is set forth in his information in this case, which said bill was duly verified by the oath of said relator.

"28th. Relator has not been paid anything for his said services or expenses rendered and expended as before stated.

"28½. The services rendered relator, as above stated, were not voluntary, but under the agreement and expectation that he would receive compensation therefor.

"29th. The said board of county commissioners have failed and refused to take any action whatever upon said bill of relator.

"30th. In January, 1884, the board of county commissioners, in their estimate of revenue required for bonded debt for fiscal year, estimated, and in July following levied

taxes to pay the interest on said two series of bonds in the sum of $25,000.

"31st. In January, 1885, the county board did not include the bill of claim of relator for services and expenses so rendered in their estimate of expenses.

" 32d. No judgment at law had been rendered, adjudging said two series of bonds so proposed to be redeemed valid and legal.

" 33rd. No vote of the electors of said county was had upon the question of the issuing of said proposed refunding bonds, or for the redemption of the first and second series of the Midland Pacific bonds.

" 34th. There is no fraud or collusion between relator and the board of county commissioners in the matter of making a proper defense to this action.

"All of which is respectfully submitted,

"WM. H. MUNGER,

"Referee."

The defendants except to finding No. 16, for "That the referee did not state any persons who wrote such letters, that the bonds to be refunded were issued absolute as to time of payment." The principal objection made is that it is supported only by the testimony of the relator himself ; and that it is contradicted by the positive statements of three witnesses named. In our opinion, however, the the evidence is sufficient to justify the referee in making the finding objected to.

Exceptions are also taken to findings numbered 22, 24, 26, 28, 32, and 34, principally upon the ground in substance that they are against the weight of evidence. Without attempting to review the evidence at length, or give a synopsis of it, we will say, that each of the findings is based upon the evidence, and seems to be supported by it. The careful and capable lawyer who acted as referee in the case has taken a large amount of testimony in the case, which is now before us, and has predicated his find-

ings on such testimony. That the defendants employed the relator as agent to aid in refunding the bonds of Lancaster county at a low rate of interest there is no question, and that in pursuance of such employment he expended his own money and spent several days' time in endeavoring to bring about the refunding of such bonds is undisputed. These services were rendered, too, on the promise of compensation. The county availed itself of this labor and has been benefitted thereby. These services seem to have been necessary on the part of some one employed by the county to enable the county to refund its bonds. and the county having received the benefit of the labor should make a fair compensation therefor, and for the money actually and necessarily expended by such agent in the prosecution of his labors.

While it is true that the powers of a board of county commissioners is derived from the statute, and a contract entered into without authority of law is void, still the law is not to be construed in such a manner as to deprive the county board of the power to pay a reasonable compensation for beneficial labor performed for the county at its request, on the adjustment of its funded indebtedness. This, however, will not include compensation for services as attorney, for the discovery that the bonds of Lancaster county were payable " on or before " the dates named in the proposition. The records of a county ought to be kept in such a manner that the time when its bonded indebtedness would become due, or would be paid upon the exercise of an option to that effect, would readily be ascertained by all tax payers; and it is somewhat remarkable that the defendants, who were charged with the management of the financial affairs of the county, did not examine such record and, if possible, fund the bonds at a lower rate of interest. This certainly was for the interest of all tax payers in the county.

This court, however, cannot permit any one to speculate

on the funds of a county by proferring advice upon a matter of law which is presumed to be known to all. Thus in *Platte County v. Gerrard*, 12 Neb., 244, the defendants had pointed out certain railroad lands to the county commissioners as being taxable, and were to issue certain notices, and give advice in the case for twenty-five per cent. of the taxes collected; but this court refused to enforce the contract. In such case it was the duty of the county board to place such lands on the tax list and to collect and apply the revenue arising therefrom in the manner provided by law; therefore, there was no authority to divert any portion of the same from the county treasnry. So in this case the defendants have no authority to employ private parties to refund the county bonds, and divert a portion of the amount received therefor from the public treasury. This, if permitted, would . result in gross abuse. The entire amount therefor derived from the sale of such bonds must be paid into the appropriate fund, and applied to the purposes authorized by statute. Where, however, a county has employed an agent to assist in refunding such bonds, who, in good faith relying upon his employment, has spent his time and money in the performance of such labor from which the county has derived a benefit, justice requires that he be paid a fair compensation for such labor, and that the money necessarily expended be repaid to him with interest.

The defendants ask the court to correct and supplement the findings of the referee so that the actual facts may appear. If it was desired to have the referee find additional facts within the order of reference, the proper mode of procedure is by a motion for a further report. The report, however, seems to cover all the questions submitted. A peremptory writ will issue requiring the board of county commissioners of Lancaster county to act upon the claim of the relator so far as the repayment of the money expended by him as above set forth, and to fair compensation for the

labor performed by him for said county, and as to all other matters, the writ is denied.

REESE and COBB, JJ., (*not concurring in full in the above opinion*) :

We agree that the writ may issue in this case to require respondents to audit the claim of relator, the amount to be limited to a repayment of the money actually expended by him for the benefit of the county, as found by the referee, to wit, $453.

JUDGMENT ACCORDINGLY.