STATE OF NEBRASKA V. COMMERCIAL & SAVINGS
BANK OF KEARNEY, NEBRASKA.

FILED JUNE 6, 1893.    No. 5218.

1. **Findings of Referee.** The findings of fact in the report of a referee will not be disturbed, unless manifestly contrary to the weight of the evidence.

2. **State Banks:** INSOLVENCY: ASSETS: AUTHORITY OF RECEIVER. In winding up the affairs of an insolvent bank under the statutes of this state, the receiver of such bank, when so authorized by this court, may take such steps as shall be necessary to enable him to secure possession of the assets of such bank, or their value.

3. ——: ——: PROCEEDINGS TO OBTAIN POSSESSION OF ASSETS: FRAUD OF OFFICERS: PARTIES. It is not necessary in proceedings to obtain possession of the assets of an insolvent bank wrongfully withheld by one of its former officers, to join as parties to the proceedings other individuals for whose benefit the misappropriation took place; neither can such bank officer require the allowance of a set-off or counter-claim as a condition precedent to the delivery of the possession of such assets.

4. ——: ——: FRAUD: OFFICERS: LIABILITY FOR VALUE OF ASSETS. Where parties have, by the fraudulent conduct of themselves or their agents, obtained possession of the assets of an insolvent bank, and are unable to return to the receiver of such insolvent bank the said assets in kind, such parties will be held to strict accountability for the value thereof.

ORIGINAL action to wind up the affairs of the Commercial & Savings Bank of Kearney, Nebraska, under the banking law of 1889.

Henry Gibbons, receiver, filed a petition for an order to require the Mutual Loan & Investment Company and S. S. St. John to surrender and deliver to him, as receiver of the Commercial & Savings Bank of Kearney, certain notes and other things of value obtained by them from John Barnd, cashier, and wrongfully withheld. Answers

were filed, and the cause referred to Henry C. Andrews. His findings were against the respondents.  *Judgment for receiver.*

*George H. Hastings, Attorney General,* and *Marston & Nevius,* for the receiver.

*Willis L. Hand* and *Francis G. Hamer, contra.*

RYAN, C.

The Commercial & Savings Bank of Kearney was organized under the laws of this state in the fall of the year of 1889, and as such bank transacted business until and including January 30, 1892.   On this last named date, and for some time previous thereto, Sylvester S. St. John was president of said bank, at the time being secretary of the Mutual Loan & Investment Company of Kearney, while John Barnd, contemporaneously, was cashier of the aforesaid bank.   About half past 8 o'clock P. M. of January 30, 1892 (which was Saturday) there was executed between the Mutual Loan & Investment Company, by Sylvester S. St. John, its secretary, and Sylvester S. St. John in his individual capacity, as parties of the first part, and the Commercial & Savings Bank by John Barnd, its cashier, and by John Barnd individually, as parties of the second part, a writing of which the following is a copy:

"KEARNEY, NEB., January 30, 1892.

"Articles of agreement, made and entered into this day by and between the Mutual Loan & Investment Company and Sylvester S. St. John, of the one part, and the Commercial & Savings Bank and John Barnd, of the second part, witnesseth, that the said party of the first part hereby assumes and agrees to pay a certain note of five thousand ($5,000) dollars given by John Barnd to the Mutual Loan & Investment Company, and by them discounted at Essex National Bank, Haverhill, Mass., in consideration of the

said Commercial & Savings Bank paying a certain note of five thousand dollars ($5,000), given by the said Mutual Loan & Investment Company to said Commercial & Savings Bank, and by them discounted at the Union National Bank of Chicago. In consideration of the payment in cash of two thousand ($2,000) dollars, the Commercial & Savings Bank hereby agrees to pay a certain note given by the Mutual Loan & Investment Company to said bank, and by them discounted at the Lincoln National Bank, Lincoln, Neb., and they hereby agree to return certain notes for three thousand ($3,000) dollars put up by the said the Mutual Loan & Investment Company as collateral to said note of two thousand ($2,000) dollars.

"The Commercial & Savings Bank also agrees to pay a certain draft to the Citizens Savings & Trust Company of Iowa City, Iowa, given in payment of a certain certificate of deposit issued by the said the Commercial & Savings Bank to A. C. Hinman and by him discounted at the Citizens Savings & Trust Company of Iowa City, Iowa.

"Also, Syl. S. St. John agrees to turn over to said John Barnd stock number one (1), two (2), and four (4), and thirty-eight (38) of the Commercial & Savings Bank, being two hundred (200) shares, this day sold to said John Barnd, cashier, and the said John Barnd agrees to turn over to Syl. S. St. John number sixteen (16) and seventeen (17) of the Mutual Loan & Investment Company's stock, being seventy-five (75) shares this day sold to said Sylvester S. St. John.

"The Commercial & Savings Bank also agrees to return to the Mutual Loan & Investment Company first mortgages on real estate amounting to forty-nine hundred fifty ($4950) dollars held by the Union National Bank of Chicago as collateral security; also five thousand dollars ($5,000), more or less, of first mortgages on real estate held by F. D. Updyke as collateral to the said Commercial & Savings Bank's note of five thousand ($5,000) dollars,

which the said Commercial & Savings Bank agrees to pay.

"In witness whereof, we have set our hands and seals this 30th day of January, 1892.

                    "THE MUTUAL LOAN & INV. CO.,
                        "By SYL. S. ST. JOHN, Sec'y.    [SEAL.]
                    "SYLVESTER S. ST. JOHN.          [SEAL.]
    "Witness:
        "A. H. BERTRAND.
        "L. H. ST. JOHN.
                    "THE COMMERCIAL & SAVINGS BANK,
                        "By JOHN BARND, Cashier.   [SEAL.]
                    "JOHN BARND.                 [SEAL.]"

On Monday, February 1, 1892, a special meeting of the directors of said bank was held at 8 o'clock A. M., as shown by the bank records, at which meeting the following proceedings were had:

"SPECIAL MEETING OF DIRECTORS HELD AT 8 A. M.
                    FEBRUARY 1, 1892.

"Meeting called to order by S. S. St. John, president. Present, S. S. St. John, John Barnd, John Scott, O. P. Pearson, W. F. Pickering, T. N. Hartzell, and A. H. Bertrand. The following letter was read:

                    "'KEARNEY, NEB., January 30, 1892.
"'To the Board of Directors of the Commercial & Savings Bank:

"'GENTLEMEN: Having sold my stock, and disposed of all my interest in the bank, I necessarily cease all of my connection with the same, and tender my resignation as director and president.

        "'Yours most truly,   SYLVESTER S. ST. JOHN.'

"The resignation of Mr. St. John was moved and carried as director and president.

"On motion, the resignation of John Barnd, cashier of the bank, was carried and accepted.

15

"On motion, John Barnd was elected president of the bank. Carried.

"On motion, it was seconded and carried that the board of directors confirm the transfer of stock, notes, etc., made between S. S. St. John and the Mutual Loan & Investment Company, of the first part, and John Barnd and the Commercial & Savings Bank, of the second part, as appears on the records of the bank as having taken place January 30, 1892.

"A statement was made by John Barnd, that owing to conditions and circumstances over which the bank had no control, the bank would possibly be compelled to close its doors and business for want of funds; that this state of affairs was brought about by the general depression of financial matters for the last eighteen months, causing a shrinkage in the deposits of the bank, and inability to collect and realize upon its resources.

"On motion, the resignation of O. P. Pearson, John Scott, T. N. Hartzell, and W. F. Pickering as directors of the bank were accepted, and their stock in said bank was purchased by the Commercial & Savings Bank. Moved and carried that the above transfer of bank stocks be recorded on the stock ledger of the bank.

"On motion, adjourned.

"A. H. Bertrand,
"*Ass't Cashier, and Actg. Secy.*"

As developed by subsequent events, the bank was at that time hopelessly insolvent; its stock had no value whatever. Under these circumstances, if there is charged against the Mutual Loan & Investment Company and Sylvester S. St. John, the parties of the first part to the above agreement, what they were to receive thereunder, and to the Commercial & Savings Bank and John Barnd, as parties of the second part, the items that said agreement entitled them to receive, such statement would stand as follows:

The Mutual Loan & Investment Company, and Sylvester
S. St. John, Dr.

To agreement of Commercial & Savings Bank and
   John Barnd to pay note Mutual Loan & Invest-
   ment Company...................................... $5,000
To agreement of Commercial & Savings Bank to
   pay note of above company to said bank, after-
   ward discounted at Lincoln National Bank...... 2,000
To collaterals to above to be returned .............. 3,000
To 75 shares, $100 each, of stock Mutual Loan &
   Investment Company, at par value .............. 7,500
To first mortgages on real estate to be returned,
   held by Union National Bank, Chicago ......... 4,950
To first mortgages held by Updyke as collateral... 5,000

    Total........................................$27,450

The Commercial & Savings Bank and John Barnd, Dr.

To Mutual Loan & Investment Company and S.
   S. St. John agreement to pay John Barnd's note
   to said Mutual Loan & Investment Company... $5,000
To cash paid to first parties to agreement .......... 2,000
To 200 shares stock of said bank, worthless........ 0,000

    Total............................................. $7,000

The terms of this agreement, as above shown, entitled
the parties of the first part to $27,450, while the Commer-
cial & Savings Bank and John Barnd, parties of the sec-
ond part, received, in all, a consideration of $7,000. Of
this $7,000 the note of John Barnd to the Mutual Loan
& Investment Company for $5,000 had been discounted
by the Essex National Bank of Haverhill, Massachusetts,
presumably with the guaranty of said Mutual Loan & In-
vestment Company, as the evidence for the defendant
clearly shows that that was its usual course as to notes
discounted by said loan and investment company. As to

this note for $5,000, this company assumed no new or independent liability, for, in the light of subsequent events, it is quite clear that Sylvester S. St. John then well knew that neither the Commercial & Savings Bank nor John Barnd would be able to pay this note after becoming a party to this arrangement. It is, therefore, not unfair to charge upon this statement, compiled from said written contract, as having been received from the Mutual Loan & Investment Company and Sylvester S. St. John $27,-450, and as received by the bank and its cashier, but $2,000 being the cash recited as paid. This would leave a balance in favor of the Mutual Loan & Investment Company and its secretary, Sylvester S. St. John, parties of the first part, of $25,450. As there was found in this bank but $20.70 in cash, according to the evidence of John Barnd, its partner as party of the first part in the above transaction, it would seem that the bank got nothing out of this deal which, with something of grim irony, its president and cashier call an exchange. When in considering this "exchange" it is remembered that the Commercial & Savings Bank was represented by its cashier, whose judgment was impaired by an insane delusion, and by a president whose interests were that the opposite party, whose controlling officer he then was, should profit at the bank's expense, there is nothing marvelous in the result. On behalf of the secretary of the Mutual Loan & Investment Company, who held the office of president of the insolvent bank, until its utter ruin and the robbery of its patrons was an accomplished fact, nothing in extenuation can be urged. When he tendered his resignation as president of the bank at the meeting of the directors held at 8 o'clock in the forenoon of Monday, February 1, 1892, he was aware that the bank was insolvent, rendered hopelessly so by his own betrayal of his trust. It is now urged on his behalf that there can be no order made in respect to the stock of the defunct bank, held by the sons

and brother of this perfidious president, because they are not made parties to this proceeding. Under the facts in this case it is hoped that no necessity will exist for making these relatives such parties. The misconduct of Sylvester S. St. John, as president of the Commercial & Savings Bank, in becoming a party to the misappropriation of the assets of that bank subjected him to a personal liability for the full value of those assets to the bank's creditors. It cannot be too strongly or too frequently impressed upon the minds of officers and managers of banks and other corporations that they are but agents, and that as such they must loyally serve their principals. Banks are necessary concomitants of civilization; to them are entrusted the earnings of honest toil, the accumulations of intelligent enterprise, the trust funds of charity, orphanage, and helpless old age, and as managers of such institutions, bank presidents, cashiers, and directors cannot be too strongly impressed with the responsibility of their official positions. As to this trust relation the law will especially tolerate no violation of the eighth commandment.

Sylvester S. St. John and the Mutual Loan & Investment Company question the powers of the receiver to institute this sort of proceedings as to them. A sufficient answer to this will be found by a reference to *State v. Commercial State Bank*, 28 Neb., 677, and *State v. Exchange Bank*, 34 Id., 198. The order in this case appointing Henry Gibbons receiver required the officers of the Commercial & Savings Bank to deliver to him all the property and effects of said bank of what description soever of which they had possession. In view of the fact that the evidence upon which the referee predicated his findings fully sustains each of said findings, the matters for which the Mutual Loan & Investment Company and Sylvester S. St. John shall be held accountable to the receiver aforesaid will be stated in accordance with said findings. It is alleged, however, that these findings fail to state the value of the sepa-

rate items with which we must of necessity deal. Possibly it would have been better that the report had been a little fuller, so as to cover this suggestion, but as no motion was made for such change by the defendants, this criticism can avail nothing. (*State v. Lancaster County*, 20 Neb., 419.) The report of the referee, however, with the evidence, to which reference will be briefly made, is amply sufficient for our purposes. By the testimony of Sylvester S. St. John it is established that in the so-called excnange the stock of the Mutual Loan & Investment Company was treated as of par value, and we shall act upon the same estimate. The evidence shows that the bank stock held by the Mutual Loan & Investment Company on January 30, 1892, was utterly worthless, as were also the notes of John Barnd. The finding of the referee as to the property received by Sylvester S. St. John and the Mutual Loan & Investment Company was as follows:

| | | |
|---|---:|---:|
| Capital stock Mutual Loan & Investment Company | $27,500 | 00 |
| Capital stock Mutual Loan & Investment Company, of Barnd | 7,500 | 00 |
| Notes of Mutual Loan & Investment Company | 2,000 | 00 |
| Notes Mutual Loan & Investment Company | 5,000 | 00 |
| Cash deposited to company | 3,761 | 00 |
| Note of S. S. St. John, and interest $69 | 1,025 | 63 |
| Note of S. S. St. John | 4,434 | 00 |
| Note of L. N. St. John | 2,087 | 24 |
| Note of T. E. St. John | 400 | 00 |
| Total received, by St. John and M. L. & I. Co | $53,707 | 87 |

Against this there was turned over to the bank and John Barnd the aforesaid worthless bank stock and equally worthless notes of John Barnd, with the following items: Cash, check, $2,780.40; notes of Mutual Loan &

Investment Company, $9,239, in all $12,019.40.    From the statement of the property received by St. John and the Mutual Loan & Investment Company, as shown by the finding of the referee, there should be deducted the item of capital stock Mutual Loan & Investment Company, of Barnd, $7,500, which leaves on that score a total of $46,-207.87.    Deducting from this the value of the property received by the bank and John Barnd, $12,019.40, the difference of $34,188.47 represents the value of the property for which Sylvester S. St. John and the Mutual Loan & Investment Company should be held liable to account to the receiver of the aforesaid bank, with whatever interest and earnings since January 30, 1892, have accrued thereon.    As this court has original jurisdiction to wind up the affairs of insolvent state banks, and as it has already assumed jurisdiction of this bank's affairs, it is not deemed advisable to subject the parties to the inconvenience and expense of unnecessary litigation.

The Mutual Loan & Investment Company, aforesaid, and Sylvester S. St. John are, therefore, required to deliver to the receiver of the Commercial & Savings Bank, aforesaid, the value of the stock of the Mutual Loan & Investment Company of $27,500 canceled by said Mutual Loan & Investment Company, and all the notes and other property received as aforesaid, being in all of the aggregate amount of $34,188.47, with seven per cent interest thereon from January 30, 1892, within thirty days from the date on which this opinion is filed with the clerk of this court.    If this requirement is not complied with, such further proceedings will be taken by this court as shall be found necessary to enforce such compliance.

JUDGMENT ACCORDINGLY.

THE other commissioners concur.