JULIUS SCHUSTER ET AL., APPELLANTS, V. NORTH AMERICAN HOTEL COMPANY, APPELLEE.

FILED JULY 20, 1921. No. 21509.

1. **Corporations: SUBSCRIPTION FOR STOCK: UNAUTHORIZED REPRESENTATIONS BY AGENT.** Where an order contract for the purchase of

stock in a corporation provided "No conditions, agreements or representations,' other than those printed above, shall bind said company," and the corporation on the faith of said order, and without knowledge of any oral promises, representations and agreements made by the agent to the purchasers, issued the stock and received payment therefor, the corporation was not bound by any such promises, representations and agreements outside of those contained in the written order.

2. **Principal and Agent**: AUTHORITY OF AGENT: NOTICE. A person dealing with one known to be an agent is held to the exercise of reasonable prudence, and, if an agent makes an agreement, representation or promise so unusual and unreasonable as to arouse the suspicion of a man of ordinary or average business prudence, he is put upon notice and must ascertain if actual authority has been conferred.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Stewart, Perry & Stewart* and *Will H. Thompson & Son,* for appellants.

*Baker & Ready, contra.*

TIBBETS, C.

This is an action brought by plaintiffs against the defendant to recover $2,000 paid by the plaintiffs to defendant for stock in the defendant company. Trial was had to a jury. At the close of plaintiffs' testimony the defendant moved for an instructed verdict and for a dismissal. The motion was sustained, and judgment was rendered accordingly. Plaintiffs appeal.

The petition alleges that the plaintiffs are farmers and partners in the farming business in Polk county, Nebraska; that defendant is an Iowa corporation; that on or about June 19, 1917, the defendant, by its stock-sales agents, N. E. Blair and Henry Lachnit, solicited plaintiffs to purchase stock in defendant corporation; that plaintiffs informed said agents that they had no knowledge of defendant's company, but knew of the Bankers Realty Investment Company, a Nebraska company, at Omaha; that said agents informed plaintiffs that the two

companies were one and the same company; that stock in defendant company was in fact stock in the realty company; that the defendant company, if requested, gave a contract to pay back upon a return of the stock certificate the purchase price with 6 per cent. interest thereon, at any time after two months and within ten years from the date of such subscription, and that this would apply to plaintiffs; that on the 19th day of June, 1917, plaintiffs made and delivered to defendant, through its agent, a written subscription for ten shares of defendant's preferred stock, and plaintiffs paid therefor $1,000; that on the 3d day of July, 1917, plaintiffs subscribed for an additional ten shares of stock under the same understanding and agreement as was had concerning those purchased previously, and paid therefor $1,000. Plaintiffs further allege that they were induced to sign said written subscription for stock and pay said $2,000 by reason of the said representations by defendant, through its said agents, coupled with the promise to send to plaintiffs a writing evidencing the written agreement for repayment of the purchase price of said stock after two months and within ten years. Plaintiffs also allege that the defendant and the Bankers Realty Investment Company are separate and distinct corporations; that the statement by the agent that the stock in the Bankers Realty Investment Company and in the defendant company was the same, and that the defendant shared in the business and profits of the realty company was untrue; that such representations were the inducements leading them to subscribe for said stock; that they did not learn that such representations were false until about February 1, 1919, when they elected to return to defendant said stock certificates, and tendered the same to defendant and demanded of it the repayment of said $2,000, which defendant refused to accept; that plaintiffs also offered to return the sum of $46.96 received by them as dividends January 1, 1918, and pray for judgment for the sum of $2,000, with legal interest thereon from January 1, 1919.

Schuster v. North American Hotel Co.

The defendant, for its answer, admits that it is a corporation, and alleges that the plaintiffs have improperly joined in their petition several causes of action, and files a general denial, except as to those matters which are expressly and specifically admitted, admits all that part of the allegations of the petition relating to the purchase by the plaintiffs from the defendant of the stock in question and signed written contracts of subscription for the same, and alleges that said written contracts were fully explained and understood by the plaintiffs before their signatures were affixed thereto. Defendant, further answering, alleges that said contracts, among other provisions, contained the following clause: "No conditions, agreements or representations, other than those printed above, shall bind the said company." Defendant denies that any misrepresentations were made as alleged in the petition. The contracts of subscription contained the following: "It is understood that said certificate of stock will be issued subject to the constitution and by-laws of the North American Hotel Company." And there is nothing in said constitution or by-laws providing for the repurchase of the said stock of said company, except as contained in article 5, section 1 of the by-laws, which was plainly and legibly printed on the reverse side of the subscription contract signed by the plaintiffs, and was plainly and legibly printed on the face of the certificates of said stock received by the plaintiffs; and, further, that no officer, servant, agent or employee of the defendant company was authorized, instructed or permitted to make any contract with reference to the sale of said stock, other than that as printed on the subscription contract signed by plaintiffs, and that said defendant furnished to its agent the said printed form, and that the defendant had no knowledge of any verbal agreement or representations made or entered into by its said agents otherwise than contained in said subscription contracts. Defendant, for further answer, alleges that approximately two years expired between the date of said subscription contracts

and the date upon which plaintiffs claimed to this defendant that any of said misrepresentations set forth had been made, or claimed that any such oral contract set forth had been made, or that any notice thereof of any claim had been received by the company, and that by reason thereof the plaintiffs have waived said claims and are estopped from setting up or asserting said claims, and ask that the action be dismissed.

It will be seen that the pleadings summarized would indicate that, under the issues made, the plaintiffs are relying upon the representations as to the relation between the realty company and the defendant, and also that there was an agreement upon the part of the agents to furnish a written contract in reference to the repurchase by the defendant of the stock and the failure so to do, and the defendant is relying upon the contract, in which it is expressly set forth that the company shall not be liable for any representations not included in the contract, and also the question of estoppel.

The plaintiffs in their reply brief say: "Plaintiffs' action is not as defendant's counsel contend, an action on a contract or for damages on account of deceit in obtaining a contract, but the petition clearly shows that the plaintiffs rescinded the contract for fraud, tendered back the stock received from defendant, and demanded the repayment of the money received by defendant therefor." The first proposition under this statement of the plaintiffs to which we direct our attention is: Does the plaintiffs' petition bear out the statement? Second, did the representations of the agents, as shown by their evidence, bind the defendant?

As to the first proposition, the fact that plaintiffs allege in the petition that they were induced by fraud and misrepresentations to purchase the stock in question, and that they tendered the stock back to defendant and made their tender good by bringing it into court, and by their asking that there be returned to them the purchase price thereof, is simply a rescission of the contract on the

ground of fraud and misrepresentation. In the case of *First Nat. Bank v. McKinney,* 47 Neb. 149, it is held: "A vendor who is induced to part with possession of property through the fraud of the purchasers has his election to rescind the contract and reclaim the property sold, or to ratify the sale and pursue his ordinary remedy by an action on the contract. But such remedies are not concurrent, and by electing to pursue one with a knowledge of the facts, he waives his right to the other." This principle was adhered to in the cases of *Pollock v. Smith,* 49 Neb. 864; *Hawver v. City of Omaha,* 52 Neb. 734, and *American Building & Loan Ass'n v. Rainbolt,* 48 Neb. 434. We are therefore of the opinion that the action was one for rescission.

We now come to the vital proposition arising in this case: Were the misrepresentations made by the agent binding upon the defendant? The uncontradicted evidence was that the defendant had no knowledge of such misrepresentations having been made for some considerable time after the transactions between the plaintiffs and the defendant were concluded. The crucial test is, did the agent exceed his authority in making such statements, and did the plaintiffs have such knowledge as would indicate that the agent was not authorized or empowered by the principal to make them. On the face of the subscription contracts appears the following: "No conditions, agreements or representations, other than those printed above, shall bind the said company." This was notice to the signers. The order was to the North American Hotel Company, in large print. The certificates of stock were also from the hotel company. Plaintiffs state that they did not read all of the order, but took Blake's word for a considerable part of what it contained. Their negligence could not be attributed to the defendant. The defendant had given all the notice it could give. If plaintiffs had done what the ordinarily prudent business man would and should have done, they would have read the contract, and their failure so to do was at their own

peril.   The case of *Kaley v. Northwestern Mutual Life Ins. Co.,* 102 Neb. 135, bears directly upon the proposition arising as to the powers of the agent.   This court held in that case:   "An agent of a life insurance company, the limitation of whose power is set forth in the application for insurance, which limitation is expressly called to the attention of the applicant, cannot vary the terms of the policy by an estimate of results of the policy attached by him thereto."   Another very recent case, that of *Omaha Alfalfa Milling Co. v. Pinkham,* 105 Neb. 20, sustained the same proposition, and it was held in that case that, where the party entering into the contract is informed of the limitation of the agent, if the agent exceeds those limitations, the contract will not be binding upon his principal.   This is only in line with former decisions of this court, as in the case of *Wilson v. Beardsley,* 20 Neb. 449, and *Gregory v. Lamb,* 16 Neb. 205.   And it is in accord with holdings of courts of last resort in nearly all of the states that have acted upon that question.   *Holt Mfg. Co. v. Odenrider,* 61 Wash. 555; *Bybee v. Embree-McLean Carriage Co.,* 135 S. W. (Tex. Civ. App.) 203; 21 R. C. L. 909, sec. 85.   In fact, we find no cases holding, under the conditions as they exist in the instant one, contrary to those cited above.

Counsel for plaintiffs cite us to a number of decisions where representations made, being fraudulent, would vitiate a contract, but that is not the question at issue here.   The question at issue is whether the misrepresentations and fraud were binding upon the defendant, and in nearly all, if not all, of the cases cited by counsel the controversy was between the parties themselves or with agents with general, and not limited, powers.   In the instant case, if our conclusion be correct, there were no misrepresentations made of any character that would bind the defendant, as it was expressly provided that any representations should not be binding upon the defendant except those contained in the contract.   And some of the cases heretofore cited are conclusive upon that question.

We have been cited by counsel for plaintiffs to the case of *Griffin v. Bankers Realty Investment Co.*, 105 Neb. 419. That case arose, not upon the representations of an agent, but the representations made by the party itself, and it is therein stated: "Defendant cannot be heard to say that the sale is valid as far as the contract for purchase of stock is concerned and void so far as repurchase is concerned, since the entire contract is one and indivisible." That does not apply in the instant case. The contract for purchase was the written contract. The agreement for a contract to repurchase was an unauthorized contract between agent and plaintiff, just as much so as it would be for a contract between the two parties concerning an entirely different and separate matter, as the defendant had no knowledge whatever of the representations at that time.

We are compelled to come to the conclusion that the district court was right in sustaining the motion of defendant and rendering judgment for a dismissal, and we recommend that its judgment be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and the opinion is adopted by and made the opinion of the court.

AFFIRMED.

The following opinion on motion for rehearing was filed December 21, 1921. *Rehearing denied.*

1. **Evidence:** WRITTEN CONTRACT: PAROL EVIDENCE. Where a written contract for the subscription of stock, which is, on its face, a complete contract, and which, by its terms, declares that no agreements, not expressed therein, shall be binding between the parties, is executed and delivered, parol evidence is not admissible, in an action on the contract, to show an oral agreement made at the time, though the oral agreement may have been an inducing cause to the execution of the written instrument.

2. ———: ———: ———. The rule that evidence of a parol promise cannot be shown for the purpose of enlarging or changing the written contract, where the action is one to enforce the contract, is not applicable where the action is in fraud for damages or to

rescind the contract and to prove the oral promise as the fraudulent representation which acted as an inducement to the contract.

3. **Corporations:** SUBSCRIPTION FOR STOCK: UNAUTHORIZED REPRESENTATIONS BY AGENT. Where such a contract contains the provision that "no conditions, agreements or representations," other than those printed in the instrument, shall bind the company, the agents of the company, who sell the corporate stock and procure the execution of the subscription contract, clearly act outside the limits of their ostensible authority when they make an oral promise, as an additional stipulation and obligation of the company, that the company will, upon request, accept a return of the stock and repay the consideration, with interest.

4. ———: ———: ———. A provision in such a contract, to the effect that the agent cannot bind the company by any representations, statements or agreements, will not relieve the principal from responsibility for the fraudulent representations, made by its agents, concerning the subject-matter of the contract, as distinguished from the agreements and promises which are to be undertaken, for a sales agent has ostensible authority to make representations as to the subject-matter of the sale, and his fraud, committed within the limits of such authority, will fix responsibility upon his principal.

5. ———: ———: ———: NOTICE. When such an agent makes an oral agreement, as supplemental to the written agreement of the company, and which oral agreement is, by the terms of the written agreement, one which the agent has no authority to make, the fact that he misrepresented the present attitude of the company and did not intend or expect that the promise would be carried out, though this might fix liability for fraud upon him, would not fix responsibility upon the company, for the purchaser of the stock had notice that the agent was acting beyond his authority in making such an oral promise.

Heard before MORRISSEY, C.J., ALDRICH, DAY, DEAN, FLANSBURG and LETTON, JJ.

FLANSBURG, J.

The issues in this case are fully set out in the former opinion. It was a suit based either on fraud or upon contract. From the plaintiffs' petition it is not clear upon which theory the suit was brought.

The plaintiffs had purchased corporate stock in the North American Hotel Company, and, as a basis for their action to recover back the purchase price of the stock, set

up two representations made by the agents of the said company; one representation being that the American Hotel Company and the Bankers Realty Investment Company "were the same company and the same people, and the other, an oral promise that the American Hotel Company, if requested, would after two years return the money paid for the stock, with interest, and alleged that these representations were false. The petition does not allege the value of the stock, nor the condition of the company, nor does it allege that the plaintiffs were damaged or injured in any way by the purchase, but alleges that plaintiffs tendered their stock to the defendant and requested a repayment of the purchase price, that defendant refused, and that there is $2,000, with interest, due from the defendant to the plaintiffs. A motion was made by the defendant to require the plaintiffs to elect upon which theory they desired to proceed, whether for fraud or upon the alleged oral promise made by the defendant's agents. This motion should have been sustained, for the plaintiffs could not both affirm the contract and seek to enforce it, and, at the same time, bring an action declaring that the contract had been vitiated by fraud and seek either its rescission or damages. The lower court, on the trial of the case, directed a verdict in favor of the plaintiffs, and the case has been presented here as if it were an action based both upon fraud and upon contract.

The subscription contract, signed by the plaintiffs when they purchased the stock, contained a provision that "no conditions, agreements or representations, other than those printed above, shall bind the said company." The subscription contract was complete on its face, and evidence of any parol agreement, to add to or qualify or condition the contract of purchase expressed in the writing, was entirely incompetent. *Security Savings Bank v. Rhodes*, 107 Neb. ——. Any action, therefore, to enforce the alleged oral promise must fail for the want of legal proof to establish such a contract.

Plaintiffs rely upon the case of *Griffin v. Bankers*

*Realty Investment Co.,* 105 Neb. 419. In that case it was pointed out in the opinion that there were written provisions in the contract which were open to interpretation, and the opinion says that the company had paid to the plaintiff $300, in recognition of an interpretation placed upon the contract by the parties. The general rule is emphasized "that parol evidence is not admissible to change, add to, vary or modify a written subscription for stock in a corporation."

Though it is proper to resort to parol and other extrinsic evidence to explain ambiguities or to interpret written contracts, which are plainly open to explanation or construction, still we think it is stating the rule too broadly, as seems to have been done in that case, to say that when the execution of a written contract, which is complete on its face and certain in its terms, has been induced upon the faith of an oral stipulation, made at the time, such oral stipulation may properly be shown to supplement the writing, and that such oral stipulation may be enforced as a part of the contract, in order to prevent fraud. We do not so understand the rule. The very purpose of putting contracts in writing is to attain complete certainty of obligation and to prevent fraud. The stipulations of oral contracts depend for their proof, not only upon the memory, but largely upon the truthfulness and moral character of the parties bound. Hence, oral contracts give more opportunity for fraud. To allow oral stipulations to be added to written contracts would largely destroy the salutary effect of the parol evidence rule. When fraudulent promises act as the inducement to the execution of a written contract, the remedy is for fraud, and not upon the oral promise as a contractual obligation, for the oral promise as an obligation has become merged in the written agreement and cannot, as such, legally be proved.

The case of *Fairbanks, Morse & Co. v. Burgert,* 81 Neb. 465, was a suit to recover the purchase price of machinery sold, and it is not clear whether the defense made was

based on fraud or upon an oral agreement supplementing the writing. The court said that the machinery sold was represented to be capable of doing certain work, and that, if the machinery did not meet the representation, the defendant had the right to "rescind" the purchase. It does not appear what the terms of the written contract were, but the opinion declares that the writing was simply an order, and did not, on its face, purport to be a complete contract between the parties. The conclusion that parol evidence was admissible to show and to enforce an oral agreement, supplemental to the writing, could not otherwise have been justified.

Where an agent presents a subscription contract to a prospective purchaser, and where the subscription contract does not provide for a repurchase of the stock, and contains a provision that the agent can make no other agreement or condition than those which are contained in the subscription contract, the representations by the agent or agreements by him in parol cannot be shown in order to vary the terms of the subscription contract, or to add an agreement that the company will repurchase the stock.

Furthermore, entirely aside from the parol evidence rule, the agents in this case could not have bound the company to an agreement to repurchase the stock, for an attempt to do so was clearly outside the limits of their authority as expressed in the subscription contract. *Kaley v. Northwestern Mutual Life Ins. Co.*, 102 Neb. 135; *Omaha Alfalfa Milling Co. v. Pinkham*, 105 Neb. 20.

The rule that evidence of a parol promise cannot be shown for the purpose of enlarging or changing the written contract, where the action is one to enforce the contract, is, however, not applicable where the action is in fraud to rescind the contract and to prove the oral promise as the fraudulent representation which acted as the inducement to the sale. The question then, if this action is to be considered an action in fraud, is whether such oral promise, being shown, even though made in violation of the limitation of the agent's authority, as ex-

pressed in the written contract, will constitute a fraud for which the company is responsible and which will afford the purchaser the basis for an action against the company in rescission or for damages.

It is quite generally held that a provision in a contract, to the effect that the agent cannot bind the company by any representations, statements or agreements, will not relieve the principal from responsibility for the fraudulent representations, as to the subject-matter of the contract, made by the agent, since such representations are within the scope of the agent's actual or ostensible authority. It is a self-evident fact that, in order that an agent sell corporate stock for a company, he must make representations to the buyer as to the character of the business of the company, the amount of its earnings, its financial condition and assets, and many other representations of fact which materially affect the value or desirability of the stock. An agent, even though the contract which he presents contains a clause declaring that the company will not be bound by the representations that he may make, is known to be an agent sent out for the express purpose of making representations as an inducement to the sale of stock, and the provision in the contract, therefore, is not considered as limiting the scope of his ostensible authority. Where he makes false representations concerning the subject-matter of the contract, as distinguished at least from the agreements and promises which are to be undertaken, the company is responsible, and the buyer, when injured, may rescind the contract on the ground of fraud. *General Electric Co. v. O'Connell*, 118 Minn. 53; *Edward Thompson Co. v. Schroeder*, 131 Minn. 125; *Shepard v. Pabst*, 149 Wis. 35; *Roseberry v. Hart-Parr Co.*, 145 Minn. 142; *State v. Dick*, 125 Wis. 51; *Landfried v. Milam*, 214 S. W. (Tex. Civ. App.) 847; *Remington v. Savage*, 148 Minn. 405; *Bent v. Furnald*, 159 Ill. App. 552; *Jones v. Minks*, 188 Ill. App. 45.

In all of these cases just cited it will be noted that the

fraudulent representations were representations as to the
subject-matter involved in the transaction. It is true
that in the cases of *General Electric Co. v. O'Connell,
Remington v. Savage,* and *Jones v. Minks,* the false rep-
resentations made by the agent were in the form of oral
warranties, but those warranties, instead of being purely
matters of promissory obligations, constituted also ex-
press representations of the capacity and character of the
goods to be sold, and were, to that extent, misrepresenta-
tions of existing facts and of the subject-matter of the
transaction. The agent, of course, had ostensible au-
thority to describe the goods that he was to sell, and when
he made representations as to their quality and character
he was acting within the scope of his authority.

In the case of *Pease v. Fitzgerald,* 31 Cal. App. 727,
the company was held not responsible for the agents'
representations. In that case, however, corporate stock
was sold through means of a written prospectus. All
representations necessary for the information of the
stock-buyer were set out therein, and the buyer notified
by the terms of the company's written contract that the
agent had no authority to make representations other
than as set out in the written statements of the com-
pany. Where the company's written representations fully
cover the subject-matter of the transaction and are de-
clared to be the only ones the company wishes to make,
and where these representations are brought to the knowl-
edge of the buyer, further representations by the agent
would not appear to be necessary to the performance of
the agent's duties, nor within his apparent authority to
make.

It would be quite a different matter to apply this rule
so as to make the company, in spite of the written limita-
tion in its contract, responsible for the oral promises and
stipulations which the agent should attempt to add to
the proposed agreement. The company does not, in any
sense, hold out the agent as authorized to make contracts
for it, or to change the proposed written contract. On

the other hand, the written contract sets out specifically that the company will assume no other obligations than those expressed in the writing. Though the agent may describe what he has to sell, he has not, in the face of such written limitation of authority, the power to make a contract or to add stipulations to the written contract which the company has furnished. Clearly, when he fraudulently assumes to act for the company in adding stipulations to a contract, which the company says shall be the limit of its obligations, he is acting outside the scope of his ostensible authority, and the company will not be responsible for his fraud. *Commonwealth Bonding & Casualty Ins. Co. v. Bomar*, 169 S. W. (Tex. Civ. App.) 1060; *Reagen v. National Equitable Society*, 202 S. W. (Tex. Civ. App.) 157; *Gordeen v. Pearlman*, 91 N. Y. Supp. 420; *Commonwealth Bonding & Casualty Ins. Co. v. Barrington*, 180 S. W. (Tex. Civ. App.) 936; *Guth Piano Co. v. Adams*, 114 Me. 390; 2 C. J. 857.

The case of *Bonewell & Co. v. Jacobson*, 130 Ia. 170, relied upon by the plaintiffs, was based on the fraud of the agents of the defendant, they having made, it is true, promissory representations, but among the representations complained of were statements that the defendant company was in the practice of setting out sample orchards, had actually set out orchards in other places, and was desirous of setting out such an orchard in the locality where the plaintiff lived. These representations were more than simple promises which the agents attempted to add to the written contract, but were representations as to the existing business practice of the defendant company. The specific question as to whether promissory representations could be held to come within the scope of the agents' authority, regardless of a contractual provision that the agents could make no promises or agreements, was not discussed in the case.

In the case of *Jones v. Bankers Trust Co.*, 239 Fed. 770, the court construed a somewhat similar contractual provision as the one involved here, to cover only representa-

tions amounting to warranties, promissory in character, and not other representations going only to material existing facts involving the subject-matter of the transaction, and held that, as to these latter representations, the company would be responsible.

We do not mean to say that the principal will never be liable for promissory representations made by his agent, when those promises are fraudulent, and when the agent misrepresents the present attitude of the company and does not, at the time, expect or intend that his promises shall be carried out, for when the agent, in making such promissory representations, acts within its actual or ostensible authority, such fraudulent representations, even though of a promissory character, would be as binding upon the company as any other.

Though a representation, promissory in its nature, when made with the present intention of not carrying it out, may be fraudulent and actionable, it must be remembered that this case is not brought against the agents, who actually made the representations, but against the company, and when the company had no knowledge that such representations were being made. As pointed out in the former opinion, where the matter has been thoroughly discussed, the plaintiffs were put upon notice as to the limitation of the agents' authority, expressed in the written subscription agreement, and were charged with knowledge that such a promise, made by the agents, was outside the limitation of that authority. The plaintiffs have no right to consider the promise made as being the promise of the company, for the company had restricted its obligation to the stipulations contained in the writing. Promissory representations are considered fraudulent when there is a misrepresentation of the present intention or attitude of the promisor as an existing fact. Where, however, the principal has put his attitude specifically in writing, so as to expressly describe and limit his intention concerning his willingness to assume promissory obligations, the misrepresentation of that at-

titude, so as to become in any way binding upon the principal, is placed beyond the power of the agent to make. Such promissory representations, were they held to be fraudulent in this case, could not, in the absence of ratification or estoppel, be held to be binding upon the company.

The representation, then, made by these agents, that the company would repurchase the stock, was a promise for which the company was not responsible, and which the company had, by its contract, guarded the buyer against, for the buyer was bound to take notice that the agent had no authority to make agreements for the company, and that the only agreement the company was willing to make was that expressed in the writing. Though the agents personally may have been responsible for fraud, we do not find that these representations are a sufficient basis for actionable fraud as against the company.

One other representation remains to be considered. The agents represented that the American Hotel Company and the Bankers Realty Investment Company "were the same company and the same people." Such a representation as this had to do with the subject-matter of the contract. It was a representation going directly to the desirability and value of the stock and was a representation which was reasonably incidental to the sale of stock. Such a representation was within the scope of the authority of the agents to make, and the defendant company could not set up the provision of the contract that it would not be bound by the representations of its agents in bar of an action for fraud, based on those representations, were such representations proved to be false and actionable. But from the record it appears that the parties have laid little stress upon those representations as being the basis for the suit. Little evidence is developed with regard to them. It is no doubt for this reason that the commissioner, in the former opinion, made no mention of those representations except to set out that such representations were alleged in the pleadings. The plaintiffs knew

that these two companies were not identically the same,
for plaintiffs admitted that they read the name, American
Hotel Company, upon the contract and upon their cer-
tificates of stock, and received dividends from the Ameri-
can Hotel Company. Though it is manifest they knew
the two companies were not identical, they may have
been led to believe that the companies were operated un-
der the same management and that the same officers were
in control; the representation being that they were the
"same people." So far as the record shows, however, it
may have been true that the companies were operated
under the same management and by the "same people."
No attempt is made to show that so much of the repre-
sentation was false. What the management or financial
condition of the American Hotel Company was, or the
value of the stock, is nowhere shown, and the same is
true as to the Bankers Realty Investment Company.
Whether the fact that the two companies were operated
under the same management, and whether or not that
would have been a benefit or a detriment to the American
Hotel Company, does not appear. In fact, the record is
entirely silent when it comes to the matter of proving that
this representation was false, or that the plaintiffs were
injured in any way by it.

For the reasons given, the motion for rehearing is
OVERRULED.