PATRICK B. GIBB, APPELLANT, V. CITICORP MORTGAGE, INC., A
FOREIGN CORPORATION, APPELLEE.

518 N.W.2d 910

Filed July 15, 1994.   No. S-92-1107.

356

Steven J. Olson and Brian J. Siebken, of Liakos & Olson, for appellant.

Bartholomew L. McLeay and Michael K. Bydalek, of Kutak Rock, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

Caporale, J.
## I. STATEMENT OF CASE
Through his operative petition, the plaintiff-appellant, Patrick B. Gibb, seeks, under a variety of theories, to recover damages resulting from the termite infestation of the house he purchased through an agent acting for the seller, the defendant-appellee, Citicorp Mortgage, Inc. After Citicorp successfully demurred, Gibb elected to stand on his pleading; the district court thereupon dismissed his action. Gibb then appealed to the Nebraska Court of Appeals, assigning the dismissal as error, claiming in effect that the district court erred in concluding he had failed to state a cause of action. We, on our own motion, removed the matter to this court in order to regulate the caseloads of the two appellate tribunals. We now reverse, and remand for further proceedings.

## II. SCOPE OF REVIEW
Whether a petition states a cause of action is obviously a question of law. Regarding such a question, an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Bartunek v. Gentrup, ante* p. 18, 516 N.W.2d 253 (1994).

A statement of facts sufficient to constitute a cause of action means a narrative of the events, acts, and things done or omitted which shows a legal liability of the defendant to the plaintiff. *Horton v. Ford Life Ins. Co., ante* p. 171, 578 N.W.2d 88 (1994); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994).

In determining whether a cause of action has been stated, the petition is to be construed liberally; if as so construed it states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. *Id.*; *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993). A court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Hitzemann v. Adam, ante* p. 201,

518 N.W.2d 102 (1994); *Hoiengs, supra.*

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of facts well pled and the factual and legal inferences which may reasonably be deduced from such facts, but does not accept conclusions of the pleader. *Horton, supra; Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994).

### III. FACTUAL ALLEGATIONS

According to the operative petition, Citicorp acquired the house through the foreclosure of a mortgage when the mortgagee abandoned the property because of extensive termite infestation and damage and defaulted on his mortgage obligation. Citicorp's selling agent had been informed through a report of a termite service that the property in question was infested with termites and appeared to have extensive damage. The service recommended that a qualified building inspector assess the damage. However, Citicorp chose to ignore the recommendation and instead hired the service to treat the termites and " [shore] up" the visible damage to the house.

Prior to the purchase, Citicorp's selling agent showed Gibb a single area where termite damage had occurred and assured Gibb that this was the only termite-damaged area and that all necessary repairs and treatments had been made to eliminate the termite problem.

Although neither the agent nor Citicorp made any effort to determine the full extent of the damage, the agent knew that the nonvisible termite damage had not been repaired and that it was much greater than the visible evidence indicated; nonetheless, the agent represented that the damage had been repaired and the termite problem alleviated. Citicorp knew the agent's representations to be false but failed to repudiate them; rather, Citicorp and the agent concealed and suppressed all evidence of termite damage, failed to disclose that the termite damage extended beyond those areas said to be repaired, and concealed and suppressed the fact that the additional " 'wood destroying insect inspection' " required by the purchase agreement to be made at Gibb's cost had not in fact been obtained. In point of fact, at the closing of the transaction, Citicorp provided Gibb

with a copy of a 5-month-old report prepared by the termite service after it had submitted its recommendation that the damage be assessed, which indicated that visible evidence of infestation was noted and proper control measures were performed.

The purchase agreement recited that the transaction was "based upon [Gibb's] personal inspection or investigation of the Property and not upon any representation or warranties of condition by [Citicorp] or [its] agent." The agreement further provided that the property was "sold strictly in 'AS IS' condition. [Citicorp] does not make any warranties regarding the condition of the property at the time of sale and thereafter."

Nonetheless, Gibb claims to have relied on the misrepresentations made to him and asserts he has suffered damage as a consequence.

## IV. ANALYSIS

Gibb seeks recovery under any one of two fraud theories, a negligence theory, or a contract theory.

### 1. FRAUD THEORIES

Gibb first avers he was deceived by the fraudulent misrepresentations and fraudulent concealment made by Citicorp through its agent.

#### (a) Fraudulent Misrepresentation

In order to maintain an action for fraudulent misrepresentation, the plaintiff must allege and prove the following elements: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that he or she suffered damage as a result. *Nielsen v. Adams*, 223 Neb. 262, 388 N.W.2d 840 (1986).

Gibb has pled all the essential elements for recovery based on fraudulent misrepresentation. He has claimed that Citicorp's selling agent represented that the only termite damage was the visible damage and further represented that all the necessary

repairs and treatments had been made. Therefore, a representation was alleged. In addition, Gibb avers that the representation was false because the report from the termite service reveals extensive damage and recommends that a qualified building inspector assess the damage.

Moreover, it can reasonably be inferred that the representation was made with the intention that Gibb rely on it because it relates to a material fact, and Gibb asserts he did in fact rely on the misrepresentations and that he suffered damage as a consequence.

### . (b) Fraudulent Concealment

In order to maintain an action based on fraudulent concealment, the plaintiff must allege and prove the following elements: (1) that the defendant concealed or suppressed a material fact; (2) that the defendant had knowledge of this material fact; (3) that this material fact was not within the reasonably diligent attention, observation, and judgment of the plaintiff; (4) that the defendant suppressed or concealed this fact with the intention that the plaintiff be misled as to the true condition of the property; (5) that the plaintiff was reasonably so misled; and (6) that the plaintiff suffered damage as a result. *Nelson v. Cheney*, 224 Neb. 756, 401 N.W.2d 472 (1987).

Gibb's operative petition states sufficient facts to allege all the elements for recovery based on fraudulent concealment. He avers that Citicorp concealed or suppressed the fact that the termite damage was more extensive than the visible damage. In addition, by asserting that Citicorp's agent informed it of the termite service's initial report and recommendations, Gibb claims that Citicorp knew the extent of the damage.

Furthermore, Gibb alleges that the material facts regarding the termite damage were not within his diligent attention or observation because he was misled as to the true condition of the house.

Gibb also charges that Citicorp concealed the extent of the termite damage to intentionally mislead him as to the true condition of the house. In addition, the petition states that Gibb was misled and suffered damage as a result.

### (c) Citicorp's Contentions

Notwithstanding that Gibb has pled all of the elements of those two bases of recovery, Citicorp asserts that where an agreement for the sale of real estate contains a disclaimer and an "as is" clause such as those present here, the seller should not be held liable for the fraudulent misrepresentations or concealments of its agent. Citicorp further urges that Gibb had as much access to the relevant information as did Citicorp.

### (i) Effect of "As Is" and Disclaimer Clauses

In so arguing, Citicorp acknowledges that under our law, a principal may be liable for the fraudulent actions of its agent, *Corman v. Musselman*, 232 Neb. 159, 439 N.W.2d 781 (1989), but urges that we adopt the position of New York's highest court in *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 157 N.E.2d 597, 184 N.Y.S.2d 599 (1959). Therein, the New York Court of Appeals held that a purchaser had no cause of action against a seller for false representation when the contract for the purchase of a lease contained disclaimer, "as is," and merger clauses as follows:

> "The Purchaser has examined the premises agreed to be sold and is familiar with the physical condition thereof. The Seller has not made and does not make any representations as to the physical condition, rents, leases, *expenses, operation* or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby *expressly acknowledges that no such representations have been made, and the Purchaser further acknowledges that it has inspected the premises and agrees to take the premises 'as is'* * * * It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract, which alone fully and completely expresses their agreement, *and that the same is entered into after full investigation, neither party relying upon any statement or representation*, not embodied in this contract . . . ."

(Emphasis in original.) *Danann Realty Corp.*, 5 N.Y.2d at 320, 157 N.E.2d at 598, 184 N.Y.S.2d at 601.

The *Danann Realty Corp.* purchaser nonetheless claimed

that he had been induced to enter into a contract for the purchase of a lease by the sellers' false oral representations regarding the building's operating expenses. The purchaser sought to affirm the contract and recover damages for fraud.

The *Danann Realty Corp.* majority concluded that the specific disclaimer clause, in conjunction with the merger clause, declared that the parties did not rely on representations not embodied in the contract and thus prevented the purchaser from adducing parol evidence to establish otherwise, thereby destroying the purchaser's allegations of reliance.

However, on several occasions we have addressed whether a disclaimer clause within a contract will bar a purchaser's fraud-based claim. In *Schuster v. North American Hotel Co.*, 106 Neb. 672, 184 N.W. 136 (1921), *reh'g denied* 106 Neb. 679, 684, 186 N.W. 87, 89, we wrote:

> It is quite generally held that a provision in a contract, to the effect that the agent cannot bind the company by any representations, statements or agreements, will not relieve the principal from responsibility for the fraudulent representations, as to the subject-matter of the contract, made by the agent, since such representations are within the scope of the agent's actual or ostensible authority.

Although *Schuster* concerned the sale of stock, we applied the same principle to the sale of real estate. In *Menking v. Larson*, 112 Neb. 479, 199 N.W. 823 (1924), we held that a disclaimer clause in a contract for the purchase of real estate does not relieve the vendor or his agent from responsibility for the fraudulent representations made by the vendor's agent concerning the subject matter of the contract.

In *Menking*, the disclaimer clause was similar to the provision in the agreement now before us. There, the purchaser stated and agreed that " 'he has made personal inspection of the property covered by the within contract, and is buying it solely on his own investigations, and not on any representations made by any one else as to any material matter affecting said property, or his purchase thereof.' " *Id*. at 484, 199 N.W. at 825.

Considering whether such a provision barred the purchaser from maintaining any action for fraud or deceit, we reiterated:

> "A provision in such a contract, to the effect that the agent

cannot bind the company by any representations, statements or agreements, will not relieve the principal from responsibility for the fraudulent representations, made by its agents, concerning the subject-matter of the contract . . . for a sales agent has ostensible authority to make representations as to the subject-matter of the sale, and his fraud, committed within the limits of such authority, will fix responsibility upon his principal."

*Id.*

More recently, in *Flakus v. Schug*, 213 Neb. 491, 494-95, 329 N.W.2d 859, 863 (1983), *overruled on other grounds, Nielsen v. Adams*, 223 Neb. 262, 388 N.W.2d 840 (1986), we emphasized:

It is true that in discussing the elements of fraud we said a disclaimer clause is relevant in determining whether a claimant relied on a false representation disclaimed in the clause. We also said, however, that the disclaimer is ineffective to preclude the trier of fact from considering whether fraud induced formation of the bargain.

We have also concluded that an "as is" clause does not necessarily bar a purchaser's fraud-based claim, writing in *Wolford v. Freeman*, 150 Neb. 537, 547, 35 N.W.2d 98, 103 (1948), that " '[a] provision that the buyer takes the article in the condition in which it is, or in other words, "as is," does not prevent fraudulent representations relied on by the buyer from constituting fraud . . . .' "

Claiming fraud, the *Wolford* plaintiff sought to rescind a contract for the purchase of a house, which recited that he had " 'been advised as to settling of structure and is buying same as is.' " 150 Neb. at 546, 35 N.W.2d at 101. He asserted that the vendor's agent represented that the cracks in the foundation of the house had been repaired and that the damage had been corrected, so that the purchaser should have no fear of further cracking.

After the purchaser took possession, the cracks in the foundation became progressively worse and eventually appeared in the outer walls and the foundation. The purchaser learned that the house had been built on filled ground, in violation of the city building code, and asserted the vendor knew the house had been built on filled ground, rendering the

foundation faulty, yet had concealed those facts.

We determined that the purchaser was entitled to prevail unless the vendor was relieved by the "as is" clause. We then reasoned that while the clause disclosed the purchaser's knowledge of the cracking, it did not disclose or suggest the cause of that condition. We accordingly ruled that the clause did not bind the purchaser to buying a house with the undisclosed or concealed condition which caused the visible cracking. Thus, a clause that an article is taken in the condition in which it is, or in other words, "as is," is relevant in determining whether a claimant relied on a false representation concerning the condition of the article, but is not controlling.

In like fashion here, Gibb agreed to purchase a house with visible termite damage, which Citicorp's agent misrepresented as being the extent of the termite destruction. Like the purchaser in *Wolford*, Gibb was aware of the repair to the visible damage to the structure, but, according to his allegations, was unaware of the extent of the damage. Thus, just as the disclaimer does not necessarily prevent Gibb from stating causes of action for fraudulent misrepresentation or fraudulent concealment, neither does the "as is" clause, nor do the two clauses together prevent him from doing so. Under these circumstances, the question as to whether Gibb acted reasonably is one of fact.

### (ii) Principal's Responsibility for Agent

Quoting a portion of another aspect of *Wolford*, Citicorp also contends, in effect, that as the house was sold with a disclaimer and an "as is" clause, Gibb necessarily knew that Citicorp's agent had no authority to make any representations.

In this connection Citicorp calls our attention to the following language in *Wolford*:

> " 'A principal who authorizes an agent to conduct a transaction for him, intending that the agent shall make representations to another in the course of it which the principal knows to be untrue, is liable for such misrepresentations . . . if, although he does not intend that the agent shall make misrepresentations, he should know that the agent will do so, the principal is liable . . . .' "

[Citation omitted.]

. . . .

"As between vendor and purchaser, where material facts and information are equally accessible to both, and nothing is said or done which tends to impose on the purchaser or to mislead him, the failure of the vendor to disclose such facts does not amount to actionable fraud . . . ."

150 Neb. at 544-45, 35 N.W.2d at 102-03. However, Citicorp neglects to quote the remainder of that paragraph, which comments on when an agent's misrepresentations constitute actionable fraud:

"[W]here such facts are known by the vendor and he knows them to be not within reach of the reasonably diligent attention, observation and judgment of the purchaser, and they are such as would readily mislead the purchaser as to the true conditions of the property, the vendor is bound to disclose such facts."

150 Neb. at 545, 35 N.W.2d at 103. According to the operative petition, Citicorp and its agent knew of the extensive termite infestation and damage but elected to repair only the visible portion, and its agent represented that all the necessary repairs had been made and the problem had been eliminated. Under *Wolford's* analysis, Citicorp had a duty to disclose such facts relating to the condition of the property regardless of whether it authorized its agent to make representations concerning the condition of the property.

Moreover, we have declared:

An agent, even though the contract which he presents contains a clause declaring that the company will not be bound by the representations that he may make, is known to be an agent sent out for the express purpose of making representations as an inducement to the sale . . . and the provision in the contract, therefore, is not considered as limiting the scope of his ostensible authority [and] the company is responsible . . . .

*Schuster v. North American Hotel Co.*, 106 Neb. 672, 184 N.W. 136 (1921), *reh'g denied*, 106 Neb. 679, 684, 186 N.W. 87, 89.

Whether an act is within the scope of an agent's apparent

authority is to be determined as a question of fact from all the circumstances. *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 223 Neb. 645, 392 N.W.2d 759 (1986); *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983).

Consequently, Citicorp cannot escape liability for the fraudulent conduct of its agent on the sole basis that it included a disclaimer clause in the purchase agreement. What was said and whether the statements were within the agent's apparent authority are questions of fact.

### (iii) Access to Information

Citing *Nelson v. Cheney*, 224 Neb. 756, 401 N.W.2d 472 (1987), Citicorp argues as well that as it had no contact with the termite service, it had no greater knowledge than Gibb concerning the termite damage, and thus, Citicorp cannot have any misrepresentation liability to Gibb. Once again, Citicorp's argument overlooks the posture of the case and the allegations of the operative petition.

Moreover, Citicorp's reading of *Nelson* is incorrect. The *Nelson* purchaser demanded that the vendors' agent obtain a termite inspection prior to closing. The agent explained that an exterminator already had conducted an inspection and that the agent had the termite-proofing guarantee. The sale closed, and the agent delivered the guarantee to the purchaser. The purchaser then discovered termite damage and brought an action against the vendors under the theories of false representation and fraudulent concealment. In upholding the dismissal of the false representation claim, we noted that the only representations alleged to have been made by the vendors regarding termites related to the existence of the termite-proofing guarantee. The guarantee only obligated the exterminator to return to the premises if reinfestation occurred within the guarantee period and to treat the premises for a fee. The purchaser failed to allege that the vendors or their agents made any representations concerning the condition of the premises, an essential element of the cause.

That is not the situation here; Gibb alleged specific misrepresentations regarding the extent of the termite damage and its repair. Citicorp may be liable for its agent's

misrepresentations if the fact proves to be that Gibb was justified in presuming that Citicorp's agent had the authority to make representations concerning the condition of the house.

> " ' "Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority. . . ." ' "

*Draemel*, 223 Neb. at 653, 392 N.W.2d at 764.

As to Gibb's fraudulent concealment claim, Citicorp further argues that nothing that it did or said regarding the property could be considered misleading, since the petition reveals that the termite service was an independent entity unassociated with Citicorp. Citicorp seems to argue that Gibb could have acquired the information regarding the extent and repair of the termite damage from the service if only he had asked. Citicorp urges that the material fact suppressed must not have been equally within the knowledge or reach of the purchaser for a purchaser to proceed with a fraudulent concealment claim. See *Nelson, supra*.

However, this argument ignores part of Gibb's claim. He alleges that Citicorp's agent misrepresented the condition of the premises. Gibb may argue that the information was not equally accessible to him due to the misrepresentations of Citicorp's agent, for we have written that " '[a]s between vendor and purchaser, where material facts and information are equally accessible to both, and nothing is said or done which tends to impose on the purchaser or to mislead him, the failure of the vendor to disclose such facts does not amount to actionable fraud . . . .' " *Nelson*, 224 Neb. at 760, 401 N.W.2d at 475. Accord, *Christopher v. Evans*, 219 Neb. 51, 361 N.W.2d 193 (1985); *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983), *overruled on other grounds, Nielsen v. Adams*, 223 Neb. 262, 388 N.W.2d 840 (1986); *Dargue v. Chaput*, 166 Neb. 69, 88 N.W.2d 148 (1958); *Wolford v. Freeman*, 150 Neb. 537, 35 N.W.2d 98 (1948). In the instant case, Citicorp's agent is alleged

to have made representations that misled Gibb. Therefore, Citicorp may have had a duty to disclose facts regarding the condition of the premises to correct its agent's misrepresentations.

Moreover, the general rule is that one is justified in relying upon a representation in all cases if it is a positive statement of fact and if an investigation would be required to discover the truth. *Omaha Nat. Bank v. Manufacturers Life Ins. Co.*, 213 Neb. 873, 332 N.W.2d 196 (1983). While no action will lie where ordinary prudence would have prevented the deception, this rule is generally applied when the means of discovering the truth was in the hands of the party defrauded. *Id.* In the instant case, Gibb claims to have relied on the information provided by Citicorp's agent. Whether such reliance was reasonable when the purchase agreement contained a disclaimer is a question of fact.

Citicorp's contentions with respect to Gibb's fraud theories are without merit.

### 2. NEGLIGENCE THEORY

Gibb next asserts that Citicorp negligently misrepresented the situation, declaring that Citicorp, through its agent, failed to use reasonable care when he represented that the property was free of termites. Furthermore, Gibb charges that the representations by Citicorp's agent were false, that he relied upon the representations, and that as a result he suffered damage. And it can be inferred from the setting in which the transaction allegedly arose that both the agent and Citicorp had a pecuniary interest in it.

Without detailing the elements of the negligent misrepresentation cause, we, in *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991), citing *Bayer v. Lutheran Mut. Life Ins. Co.*, 184 Neb. 826, 172 N.W.2d 400 (1969), ruled that an insurance agent or broker may be held liable for a negligent misrepresentation made to an insured. *Bayer* held that a letter in which the insurer's agent misrepresented the amount of accumulated benefits bound the insurer. Subsequently, in the course of holding that an accountant may become liable to a third party for a negligently performed service to the

accountant's client, we, in *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993), noted the position of Restatement (Second) of Torts § 552 (1977) regarding negligent misrepresentation as a basis of liability.

Thereunder, liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information. *Id.*, § 552, comment *a*. Section 552 specifies at 126-27:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

The Restatement further observes that the liability for negligent misrepresentation is more restricted than for fraudulent misrepresentation, explaining that the reason for the narrower scope of liability fixed for negligent misrepresentation is the difference between the obligations of honesty and of care.

Honesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he

says. . . . Any user of commercial information may reasonably expect the observance of this standard by a supplier of information to whom his use is reasonably foreseeable.

On the other hand, it does not follow that every user of commercial information may hold every maker to a duty of care. Unlike the duty of honesty, the duty of care to be observed in supplying information for use in commercial transactions implies an undertaking to observe a relative standard, which may be defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect.

§ 552, comment *a*. at 128. Therefore, the difference between fraudulent misrepresentation and negligent misrepresentation is the duty required in each claim. In fraudulent misrepresentation, one becomes liable for breaching the general duty of good faith or honesty. However, in a claim of negligent misrepresentation, one may become liable even though acting honestly and in good faith if one fails to exercise the level of care required under the circumstances.

As noted in *St. Paul Fire & Marine Ins. Co.*, 244 Neb. at 415, 507 N.W.2d at 280, "even in the absence of fraud, there exist circumstances under which an accountant who negligently performs a service for the accountant's client may become liable to a third party."

While we have not heretofore specifically enumerated the elements of negligent misrepresentation, other jurisdictions have adopted the language of § 552 of the Restatement. See, *St. Joseph's H & M. Ctr. v. Reserve Life*, 154 Ariz. 303, 742 P.2d 804 (Ariz. App. 1986); *Pietramale v. Dugay*, 714 S.W.2d 281 (Tenn. 1986); *Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 197 Mont. 1, 640 P.2d 453 (1982); *Beeck v. Kapalis*, 302 N.W.2d 90 (Iowa 1981); *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969); *Springdale Gardens v. Countryland Dev., Inc.*, 638 S.W.2d 813 (Mo. App. 1982); *Merriman v. Smith*, 599 S.W.2d 548 (Tenn. App. 1979); *First State Sav. v. Albright & Assoc.*, 561 So. 2d 1326 (Fla. App. 1990), *disapproved on other grounds, Garden v. Frier*, 602 So. 2d 1273 (Fla. 1992);

*Price-Orem Inv. v. Rollins, Brown & Gunnell,* 713 P.2d 55 (Utah 1986).

We follow suit and now specifically adopt the definition of the negligent misrepresentation cause of action found in § 552, *supra.*

As we have established in part IV(1)(c)(ii) that a principal may be liable for the representations of its agent, it follows that Gibb's negligence theory does not fail merely because he alleges that Citicorp's liability arises from its agent's negligent misrepresentations.

The rule that a principal is liable for the contracts of its agent applies even though the agent, in contracting, acts in his or her own interests and adversely to the principal, where the party with whom the agent contracts has no knowledge of the agent's dereliction and is not cognizant of any fact charging him or her with knowledge thereof. The principal, having selected its representative and vested him or her with apparent authority, should be the loser in such case, and not the innocent party who relied thereon. *Draemel v. Rufenacht, Bromagen & Hertz, Inc.,* 223 Neb. 645, 392 N.W.2d 759 (1986).

Other jurisdictions have recognized a purchaser's claim against a vendor based on the negligent misrepresentations of the vendor's agent. See, *John v. Robbins,* 764 F. Supp. 379 (M.D.N.C. 1991); *Silva v. Stevens,* 156 Vt. 94, 589 A.2d 852 (1991). In *John,* the purchasers brought an action against the vendors and their real estate broker, alleging that the vendors were directly liable for fraud and negligent misrepresentation, and vicariously liable for the fraudulent and negligent misrepresentation of their broker. On appeal, the reviewing court, noting that North Carolina had adopted the Restatement (Second) of Torts definition of negligent misrepresentation, determined that a material question of fact regarding the reasonableness of the purchasers' reliance precluded a grant of summary judgment in favor of the vendors on the purchasers' negligent misrepresentation claim.

In so ruling, the *John* court acknowledged that a purchaser could bring a claim against a vendor based on the negligent misrepresentations of its agent under the § 552 definition.

*Silva* also held that the vendor of a house is responsible for

the negligent misrepresentations made by an agent within the scope of the agent's authority.

Thus, as was the case with respect to Gibb's fraud theories, the reasonableness of Gibb's reliance on the agent's misrepresentations under these circumstances is a factual question.

### 3. CONTRACT THEORY

Lastly, Gibb asserts Citicorp breached the contract between the parties.

In order to recover for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that actuate the defendant's duty. *Department of Banking, Receiver v. Wilken*, 217 Neb. 796, 352 N.W.2d 145 (1984). Gibb alleged that pursuant to the purchase agreement, Citicorp was required to obtain a wood-destroying-insect inspection at his expense, that Citicorp failed to arrange the inspection but presented Gibb with an old inspection report, and that he was damaged.

Citicorp argues not that Gibb has failed to plead the necessary elements of a breach of contract, but that such a claim is inconsistent with his other theories of recovery. In support of its argument, Citicorp cites *Schuster v. North American Hotel Co.*, 106 Neb. 672, 184 N.W. 136 (1921), *reh'g denied* 106 Neb. 679, 682, 186 N.W. 87, 88:

> When fraudulent promises act as the inducement to the execution of a written contract, the remedy is for fraud, and not upon the oral promise as a contractual obligation, for the oral promise as an obligation has become merged in the written agreement and cannot, as such, legally be proved.

However, in the instant case, Gibb is not asking for the enforcement of any fraudulent promise. Regardless of any misrepresentations or concealments, Gibb charges that Citicorp failed to perform a term of the purchase agreement and claims damages as the result of that breach. We have ruled that a party who has been induced to enter into a contract by fraud has, upon its discovery, an election of remedies. He or she may either affirm the contract and sue for damages or

disaffirm it and be reinstated to the position he or she was in before the contract was consummated. *Russo v. Williams*, 160 Neb. 564, 71 N.W.2d 131 (1955).

Here, Gibb asserts four separate theories of recovery that are all based on the same cause of action, that is to say, on the same set of facts on which recovery may be had. See *Lewis v. Poduska*, 240 Neb. 312, 481 N.W.2d 898 (1992). For his fraud- and negligence-based theories, Gibb elected to affirm the contract and sue for damages instead of requesting rescission. Thus, Gibb does not, on the one hand, ask the court to disaffirm the contract in his fraud- and negligence-based claims and, on the other, ask the court to recognize the contract in his breach of contract claim. Since Gibb chose to affirm the contract, it is entirely consistent for him to also assert a claim based on breach of its terms. Therefore, all of Gibb's legal theories of recovery are consistent with each other.

## V. JUDGMENT

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.